## Case No. 15,895.

### UNITED STATES v. NOBLE.

[5 Cranch. C. C. 371.] [1]

Circuit Court, District of Columbia. Nov. Term, 1837.

COUNTERFEITING — BANK NOTE — UTTERING — POSSESSION OF OTHER COUNTERFEITS.

1. An indictment under the 18th section of the charter of the late Bank of the United States (April 10, 1816), for uttering as true a forged note of that bank, must aver that it was made "in imitation of, or purporting to be, a bill or note issued by order of the president, directors, and company of the said bank."

2. But without such averment, it may be a good indictment under the 11th section of the penitentiary act for the District of Columbia, of the 2d of March, 1831 [14 Stat. 449].

3. Notwithstanding the expiration of the term for which the corporation was created, its corporate capacity continued to exist, under the 21st section of the charter, for two years, for the final settlement and liquidation of its affairs; and during that period the bank was liable to be injured by the forgery of its notes, and such forgery committed within the two years, was properly averred in the indictment to be "to the prejudice of the right of, and with intent to defraud the president, directors, and company of the Bank of the United States."

4. An indictment, under the 11th section of the penitentiary act for the District of Columbia, for uttering as true a forged paper writing, must aver that the uttering was to the prejudice of the right of some person, body politic or corporate, or voluntary association, and with intent to defraud such person, body politic, &c.; but quære, whether it is not a good indictment at common law?

5. Upon an indictment for uttering forged bank notes, evidence may be given on the part of the United States, that a parcel of counterfeit checks and drafts on other banks, and others printed on bank paper, not filled up, were found in the defendant's possession.

Four indictments were found by the grand jury gainst the defendant [Nathaniel Green Noble].

(1) The first contained four counts. The 1st count charged that the defendant, on the 16th of July, 1837, "had in his possession and custody, one hundred and thirteen blank notes engraved and printed after the similitude of notes issued by the corporation of the presi-

: [Reported by Hon. William Cranch, Chief Judge.]

dent, directors, and company of the Bank of the United States, with intent to use said blanks, and to cause and suffer the same to be used in forging and counterfeiting notes issued by the said corporation, with intent to defraud the said corporation, against the form of the statute," &c. The 2d count was like the first, except that it charged the intent to be "to defraud the person or persons to whom the same should be uttered and passed." The 3d count charged that the defendant "had in his custody and possession, three forged and counterfeited engraved papers, purporting to be bank-notes of the president, directors, and company of the Bank of the United States, for the payment of $10 each, after the similitude of the notes of the said corporation of the president, directors, and company of the Bank of the United States, with intent to utter and pass the said forged and counterfeited engraved papers, as and for the genuine notes of the said president, directors, and company of the Bank of the United States, with intent to defraud the said president, directors, and company of the Bank of the United States against the form of the statute," &c. The 4th count was like the third, except that the notes were said to be "after the similitude of the notes of the said bank," and "with intent to defraud the person and persons to whom the same should be uttered and passed." The other three indictments. Nos. 154, 155, and 156, were for uttering three forged notes of $10 each, purporting to be bank-notes of the Bank of the United States. These indictments were all alike, except the description of the note in each. Each indictment contained two counts. The 1st count charged that the defendant, on the 16th of July, 1837, passed as true, a certain false, forged, and counterfeited paper writing, purporting to be a bank-note of the Bank of the United States, which note, dated March 14, 1836, is set out verbatim, "to the prejudice of the right of the president, directors, and company of the Bank of the United States, he then knowing the same to be false," &c. "against the form of the statute." The 2d count states that the defendant "feloniously did falsely pass as true, a certain other false" &c. "paper writing, purporting," &c. as in the first count, "with intent to defraud one Fontaine D. Merritt, knowing," &c. against the form of the statute, &c. To all these indictments, the defendant filed a general demurrer.

By the 7th section of the charter of the bank (10 April, 1816) the corporation was to continue until the 3d day of March, 1836, and by the 21st section, it is provided, that, "notwithstanding the expiration of the term for which the said corporation is created, it shall be lawful to use the corporate name, style, and capacity, for the purposes of suits, for the final settlement and liquidation of the affairs and accounts of the corporation, and for the sale and disposition of their estate, real, personal and mixed; but not for any

other purpose, or in any other manner whatsoever, nor for a period exceeding two years after the expiration of the said term of incorporation." By the 18th section of the charter, "if any person shall pass, utter, or publish, or attempt to pass, utter, or publish, as true, any false, forged, or counterfeited bill or note, purporting to be a bill or note issued by order of the president, directors, and company of the said bank." "every such person shall be deemed and adjudged guilty of felony, and being thereof convicted by due course of law, shall be sentenced to be imprisoned and kept to hard labor for not less than three years, nor more than ten years; or shall be imprisoned not exceeding ten years, and fined not exceeding five thousand dollars." By the 19th section, "if any person" "shall have in his custody or possession, any blank note or notes, bill or bills, engraved and printed after the similitude of any notes or bills issued by said corporation, with intent to use such blanks, or cause or suffer the same to be used in forging or counterfeiting any of the notes or bills issued by the said corporation," "every such person, being thereof convicted by due course of law, shall be sentenced to be imprisoned and kept to hard labor for a term not exceeding five years; or shall be imprisoned for a term not exceeding five years, and fined in a sum not exceeding five thousand dollars."

Mr. R. J. Brent, for defendant, contended that the first count of these three indictments, was defective as a count upon the 18th section of the charter, because it did not aver that the forged note purported to be a bill or note issued by order of the president, directors. and company of the Bank of the United States. That the bank charter expired on the 3d of March, 1836, and therefore the corporation, on the 14th of March, 1836, the date of the forged note, had no power to make such a note. That it was not a good count under the 11th section of the penitentiary act, because the bank, not being in existence on the 16th of July, 1837, when the offence is charged to have been committed, could not be prejudiced; it had no right that could be prejudiced. That the 2d count was bad under the 18th section of the charter, for the same reasons; and was also bad under the penitentiary act, because it is not averred to be to the prejudice of any person or body politic, &c.

Mr. Key, contra, contended that both the counts were good under the penitentiary act, and at common law. By the 11th section of the penitentiary act for the District of Columbia "every person duly convicted of having passed, uttered, or published, or attempted to pass, utter, or publish as true, any such falsely made, uttered, forged, or counterfeited paper writing, or printed paper, to the prejudice of the right of any other person, body politic or corporate, or voluntary association, knowing the same to be falsely

made," &c. "with intent to defraud such person, body politic," &c. "shall be sentenced," &c.

CRANCH, Chief Judge. It is contended that the first count of the indictments for uttering the forged notes, is not good under the eighteenth section of the charter of the bank, of the 10th of April, 1816, because it does not aver that the note purported to be a bill or note issued by order of the president, directors, and company of the Bank of the United States; and because, neither on the 14th of March, 1836, the date of the note, nor on the 16th of July, 1837, when the offence was committed, had the Bank of the United States any legal existence; its charter having been limited to the 3d of March, 1836; nor had the bank, then, any right or authority to issue any such note. And that it is not a good count under the penitentiary act for the District of Columbia, because the bank, having no legal existence, could neither be prejudiced nor injured. I am of opinion that the first count is bad under the eighteenth section of the charter, because it does not aver that the forged note purported to be a bill or note issued by order of the president, directors, and company of the said bank. But I think it a good count under the penitentiary act; because I consider the bank as still in existence for this purpose; that is, to protect itself during the period of two years from the 3d of March, 1836, given by the twenty-first section of the charter, which declares, that "notwithstanding the expiration of the term for which the said corporation is created, it shall be lawful to use the corporate name, style, and capacity, for the purpose of suits; for the final settlement and liquidation of the affairs and accounts of the corporation; and for the sale and disposition of their estate, real, personal, and mixed." It is not said by whom the corporate capacity may be used for those purposes. The use is not confined to the corporation. Their capacity to sue, and to be sued, continues. The United States may use it for the purpose of vindicating the laws of the United States, and for the punishment of offenders. The corporation may use it for all purposes necessary to the final settlement and liquidation of their affairs. In order that such settlement should be justly made, it is necessary that they should be protected from forgeries, by which they may unquestionably be injured. They have still the capacity to be injured; and, therefore, it was right and correct in this count, to aver that the passing of the forged note was to the prejudice of the right of, and with intent to defraud the president, directors, and company of the Bank of the United States.

2. The second count is not good under the eighteenth section of the bank charter, and, I presume, was not framed in reference to that section. Nor is it good under the penitentiary act, because it does not aver that

the act was done to the prejudice of the right of any person or body politic. I am inclined, however, to think that it may be supported as a count at common law; but I shall be willing to hear a motion in arrest of judgment if the verdict should be against the defendant upon that count only.

There is another indictment (No. 146), against this defendant, the two first counts of which are framed upon the nineteenth section of the bank charter, for having in his possession blank notes engraved and printed after the similitude of notes issued by the corporation of the Bank of the United States with intent to use them in forging and counterfeiting notes issued by that corporation; the first count says with intent to defraud the said corporation; the second count says, with intent to defraud the person or persons to whom the same should be uttered and passed. I do not see any valid objection to these two counts. The third and fourth are for having in his possession three forged and counterfeited engraved papers purporting to be bank notes of the president, directors, and company of the Bank of the United States for the payment of ten dollars each, after the similitude of the notes of the said corporation, with intent to utter and pass them as true with intent (in the third count) to defraud the Bank of the United States; and (in the fourth count) with intent to defraud the person or persons to whom the same should be passed, contrary to the form of the statute, &c. I do not know under what statute these third and fourth counts have been framed. They are not good at common law.

MORSELL, Circuit Judge, concurred as to the indictment No. 146, and as to the second count of the other indictment; but not as to the first count; because he thought the Bank of the United States was not in existence for this purpose, and therefore could not be prejudiced or injured. (THRUSTON, Circuit Judge, absent.)

Demurrer overruled as to the two first counts in the indictment No. 146; and sustained as to the third and fourth counts. Sentence, one week's imprisonment and one dollar fine only; MORSELL, Circuit Judge, being very doubtful as to the first count, which charged the intent to be to defraud the Bank of the United States. As to the other indictments, the demurrer was overruled, and the defendant was permitted to plead the general issue.

Upon the trial, THE COURT (nem. con.) permitted evidence to be given by the United States, that a parcel of counterfeit checks and drafts on other banks, and others printed on bank-paper, not filled up, were found in the defendant's possession. See U. S. v. Shuster [Case No. 16.287] at March term, 1835, in this court, where the court permitted the United States to give evidence that certain instruments for picking locks, &c., were found upon the prisoner.

Verdict, "guilty upon the four indictments"; and the prisoner was sentenced, in full court as follows: Upon the two first counts in the indictment No. 146, fine and imprisonment, as mentioned above. Upon the indictment No. 154, to the penitentiary for two years next after the expiration or other termination of his term of imprisonment in No. 146. Upon the indictment No. 155, for two years next after the expiration, or other termination of his term of imprisonment in No. 154; and upon the indictment No. 156, for three years next after the expiration or other termination of his term of imprisonment in No. 155; making seven years in all.